Peter Strojnik,
7847 N. Central Avenue
Phoenix, Arizona 85020
Telephone: (602) 524-6602
ps@strojnik.com

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

Case No: 8:19-cv-01560-JVS-JDE

PETER STROJNIK,

Plaintiff,

vs.

SCG AMERICA CONSTRUCTION INC. DBA HYATT REGENCY ORANGE COUNTY

Defendant.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

## INTRODUCTION

It has been 30 years since the passage of the Americans with Disabilities Act, but the discrimination against the disabled persists. During this thirty year period, ADA offenders have portrayed themselves as victims to all segments of society, from the media to the general polity, from attorneys general to state legislators, from news editors to lawyer associations. They have been largely successful.

This is a dangerous pattern in the evolution in ADA civil rights. Some ableist advocates allege scandalous and impertinent plots and tales as a furtive reconnaissance mission to determine whether the memorable observation by the Honorable Judge Melinda Harmon in *Gilkerson v. Chasewood Bank*, 1 F.Supp .3d 570, 596-97 (S.D. Tex., 2014) might apply in *this* court. In *Gilkerson,* Judge Harmon displayed the courage to state what most know from experience:

Testers have been an accepted and successful means of enforcing civil rights statutes under the Fair Housing Act and Title VII of the Civil Rights Act of 1964, although **a number of courts addressing Title III cases have been skeptical, and even hostile**. *See* Lee, *Giving Disabled Testers Access to Federal Courts,* 19 Va. J. Soc. Pol'y & L. at 321–23; Johnson, *Testers Standing up for Title III of the ADA,* 59 Case W. Res. L.Rev. at 689–702. "As a result of both the Attorney General's limited resources and the limited remedies available to Title III plaintiffs, 'most suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled.'" *Betancourt v. Federated Dept. Stores,* 732 F.Supp. 2d 693, 701 (W.D.Tex.2010) *quoting Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047, 1062 (9th Cir. 2007). (Emphasis supplied.)

ADA defendants' strategy is dangerous. ADA defendants are aware of a significant social undercurrent of the hostile skepticism toward ADA plaintiffs. Defendants relentlessly bid to awaken potential skepticism in this Honorable Court. By pursuing arousal cynicism, Defendants artfully create an intolerable level of distrust between ADA plaintiffs and the Courts. The creation of uncertainty and distrust is Defendants' end game.

Now the ADA offenders are trying to turn this Courts. As here, they do so by morphing the ADA from a desegregationist expression of public policy into the unrecognizable Okefenokee swamp slither. There is nothing more pathetic that a whining and sniveling lawbreaker.

The judiciary is the last and the only branch of the government still universally trusted. Defendant's attempts to sow distrust is, on the case level, designed to benefit Defendant and prejudice Plaintiff. On the grander scale it seeks to diminish judiciary's well-earned trust and respect to that of the ever diminishing reputations of the executive and legislative branches.

This must never happen.

**ARGUMENT**

Defendant's current Motion [22] is a repackaged argument of Defendant's previous Motion [19] that was fully addressed in Plaintiff's First Amended Complaint [20].

Defendant cut-and-paste second motion to dismiss has little relevance to jurisdictional and factual allegations in the Complaint and no relevance to pleading requirements stated in *Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d

1093 (9th Cir. 2017) ("*CREEC"*). There, in Section II, the 9th Circuit Court of Appeals stated, "[t]he district court had federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1343".

**A. LEGAL STANDARDS APPLICABLE TO 12(B)(1) AND 12 (B)(6)**

**1. General**

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. On the other hand, "[i]n resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment [and] . . . [t]he court need not presume the truthfulness of the plaintiff's allegations." *Safe Air*, 373 F.3d at 1039. "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)).

However, it has also been recognized that

> [j]urisdictional dismissals in cases premised on federal-question jurisdiction are exceptional, and . . . are warranted where the alleged claim under the constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous. . . . [Moreover, ] a [j]urisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action. The question of jurisdiction and the merits of an action are intertwined where a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief.

*Id.* at 1039 (citations and internal quotation marks omitted); *see also Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly*

3

*Subterranean Geological Formation*, 524 F.3d 1090, 1094-95 (9th Cir. 2008). Thus, "[a] court may not resolve genuinely disputed facts where the question of jurisdiction is dependent on the resolution of factual issues going to the merits." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citation and internal quotation marks omitted). "In such a case, the district court assumes the truth of the allegations in a complaint . . . unless controverted by undisputed facts in the record." *Id.* (citation and internal quotation marks omitted). If, after this threshold inquiry, "a district court cannot determine jurisdiction, . . . the court may assume jurisdiction and go on to determine the relevant jurisdictional facts on either a motion going to the merits or at trial." *Id.* at 1178 (citation and internal quotation marks omitted).

In the matter at hand, the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action

**2. Pleading Standard Pursuant to 12(b)(1)**

A plaintiff's statement of subject-matter jurisdiction is not governed by the strict pleading standard of *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). To be sure, "this is not to say that a plaintiff may rely on a bare legal conclusion to assert injury-in-fact, or engage in an ingenious academic exercise in the conceivable to explain how defendants' actions caused his injury." *Id.* at 1068 (internal quotations omitted). But each element of standing need only "be supported . . . with the manner and degree of evidence required at the successive stages of litigation." *Id.* (quoting *Defenders of Wildlife*, 504 U.S. at 561). Accordingly, the Court must, at this stage, accept as true all material allegations of the complaint and construe those allegations in favor of the complaining party. *Id.* (*quoting Warth v. Seldin*, 422 U.S. 490, 501 (1975)[1].

---

[1] This paragraph is taken verbatim from Judge Mendez extraordinary discussion of post-*CREEC* standing in *Johnson v. Alhambra & O Associates* (E.D. Cal. 2:19-cv-

4

### 3. Pleading Standard under 12(b)(6) – the *Iqbal* plausibility standard

Under Fed. R. Civ. P. 8, detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555. Factual allegations are accepted as true, but legal conclusions are not. *Iqbal* , 556 U.S. at 678; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Twombly*, 550 U.S. at 556-557. 16

An *allegation* is generally understood as a claim or assertion that someone has done something legally wrong. In the Federal system, an "allegation" need not be supported by factual proof. *Iqbal, supra.* On the other hand, a *legal conclusion* is generally understood as a legal determination of an issue based on application of the law to the facts.

*Plausibility* is a credibility counterpart to *possibility*. If the factual allegations of a claim are objectively possible, and the Court believes them to be so, then the claim is found to be *plausible.*

### 4. Rule 9(b) Pleading Standard

"[I]ntent (*to return*) … and other conditions of a person's mind (*being deterred*) may be alleged generally". Fed. R. Civ. P. 9(b).

Federal Rules of Civil Procedure were drawn under the authority of the act of June 19, 1934, U.S.C., Title 28, §723b [see 2072] (Rules in actions at law; Supreme Court authorized to make), and §723c [see 2072] (Union of equity and action at law rules; power of Supreme Court) and also other grants of rule-making power to the Court. See Clark and Moore, *A New Federal Civil Procedure—I. The Background*, 44 Yale L.J. 387, 391 (1935). *Notes of Advisory Committee on Rules—1937 at ¶3.*

---

00103-JAM-DB at Dkt. 15, 2019) in which Judge Mendez denied a similar Motion to Dismiss. Exhibit 2.

*See also Johnson*, supra, confirming that Plaintiff did not need to plead corroborating information to bolster his allegation that he is deterred from returning to the offending public accommodation because of the existing barriers.

**5. *CREEC* Pleading Standard**

In his Complaint, Plaintiff relies on *Civil Rights Education and Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093, 1099 (9th Cir. 2017) ("CREEC"). There, the 9th Circuit resolved the question whether the plaintiffs in an ADA lawsuit were "presently deterred from visiting [defendant's] hotels" adequately alleged the deterrent effect jurisdictional doctrine. *Id.* In determining whether standing was sufficiently pled, the court limited their evaluation to the pleadings. *Id.* The plaintiffs' complaint in *CREEC* stated that "they intend to visit the relevant hotels, but have been deterred from doing so by the hotels' noncompliance with the ADA." Id. The court concluded that "[plaintiffs'] harm is 'concrete and particularized,' and their intent to visit the hotels once they provide equivalent shuttle service for the disabled renders their harm 'actual or imminent, not conjectural or hypothetical.'" *Id.* (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 560, 560 (1992)).

Further, the defendant in *CREEC* asserted, among other contentions, that plaintiffs (1) did not actually visit the hotels they just telephoned the hotel to inquire about transportation services available to disabled guests; (2) they do not intend to do so unless and until the alleged ADA violations are remedied; and (3) plaintiffs are motivated to visit the hotels only by their desire to test them for ADA compliance. *Id.* The court rejected all of defendant's arguments. First, the court held that "the purported requirement urged by [defendant] of a 'personal encounter' with an access barrier lacks foundation in Article III" and "actually visiting a hotel, as opposing to phoning, does not make a plaintiff's injury any more concrete." The court further held that "[i]t is the plaintiff's 'actual knowledge' of a barrier, rather than the source of that knowledge, that is determinative", citing *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002)). As to the issue of personally encountering of a barrier, the court rejected defendants "invitation to create a bright-line predicate of a 'personal encounter' with a barrier to access as a requirement for standing under the ADA Title III." *Id.* at 1100.

Moreover, the court held that the named plaintiffs need not intend to visit the hotels until after remediation. *Id.* The court rejected defendant's argument that plaintiff must establish a sufficient likelihood that they will again be wronged in a similar way because the injury continues so long as the equivalent access is denied. *Id.* at 1100-01. While relying on Tenth Circuit case law, the court held that the motivation to visit is irrelevant to the question of standing under Title III of the ADA and that, as ADA testers, their status does not deprive plaintiffs of standing. *Id.* at 1102.

Particularly relevant is the following quote from *CREEC*:

**The Named Plaintiffs have alleged in the First Amended Complaint that they intend to visit the relevant hotels, but have been deterred from doing so by the hotels' non-compliance with the ADA.** They further allege that they will visit the hotels when the non-compliance is cured. Thus, the ADA violations have prevented them from staying at the hotels. Without such averments, they would lack standing. However, "construing the factual allegations in the complaint in favor of the plaintiffs, " as we must at this preliminary stage, *Mont. Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 979 (9th Cir. 2013), we conclude that the Named Plaintiffs have sufficiently alleged injury in fact. *Chapman*, 631 F.3d at 953. **Their harm is "concrete and particularized, " and their intent to visit the hotels once they provide equivalent shuttle service for the disabled renders their harm "actual or imminent, not conjectural or hypothetical."** *Lujan*, 504 U.S. at 560. (Emphasis supplied)

### 6. Litigation History is Irrelevant to Rule 12 Motion.

Defendants' evidence concerning plaintiff's history of engaging in ADA litigation has absolutely no bearing on the validity of plaintiff's accessibility claims presented in this action. *Molski v. Evergreen Dynasty Corp*, 500 F.3d 1047, 1062 (9th Cir. 2007); *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2007); *Moore v. Millenium Acquisitions* ( E.D. Cal. 2016  1:14-cv-01402); *see also Kohler v. Rednap, Inc.*, 794 F.Supp.2d 1091, 1096 (C.D. Cal. 2011).

### 7. Website Violations

Websites are subject to the ADA, *Robles v. Domino's Pizza, LLC,* 913 F. 3d. 898 (2019) and Unruh, *White v. Square,* 7 Cal. 5th 1019 (2019).

///

### 8. Intent to Return Factors of *Harris v. Del Taco* have Never Been Adopted in the 9th Circuit.

Reliance on *Harris v. Del Taco, Inc.,* 396 F. Supp. 2d 1107, 1111 (C.D. Cal. 2005) and similar cases to determine whether Plaintiff has established sufficiently his likelihood of returning to the Hotel is not warranted. The *Harris* factors are: "(1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." *Harris,* 396 F. Supp. 2d at 1111 (quoting *Molski*, 359 F. Supp. 2d at 947 n.10) (internal quotation marks omitted). Since this test was first articulated fifteen years ago, however, the Ninth Circuit has not adopted it despite having confronted the same or similar issue repeatedly in *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, (9th Cir. 2008), *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031 (9th Cir. 2008) ("*Best Western*"), *Chapman*, 631 F.3d 939, and more recently in *Ervine*, 753 F.3d 862. Instead, the Ninth Circuit in those cases consistently opted to apply the tried-and-true method of analogizing the facts before it with those in *Pickern*[2] and/or *Doran* to determine whether a plaintiff had established imminent future injury.

On multiple other occasions, some district judges in California and the Ninth Circuit have either implicitly or explicitly declined to follow the four-factor test. In *Rocca v. Jalidat, Inc.*, 2017 WL 10562626, at *4 (C.D. Cal. Sept. 13, 2017), the district judge found the test to be too "stringent." *Rocca*, 2017 WL 10562626, at *4. The Court agrees as *Pickern* and *Doran* never espoused such a stringent test. About two years ago in *CREEC*, the Ninth Circuit held that "concrete travel plans [alone] would be sufficient to show that a disabled plaintiff intends to visit a facility," disregarding three factors of the four-factor test. *CREEC*, 867 F.3d at 1100. Also in *Wilson v. Kayo Oil Co.*, 535 F. Supp. 2d 1063, 1067 (S.D. Cal. 2007), a district court applied the four-factor test and found that the plaintiff had failed to establish imminent future injury. But on appeal, the Ninth Circuit disregarded the four-factor test and reversed the district court in finding that there was imminent future injury. *Wilson v. Kayo Oil Co.*, 563 F.3d 979, 980 (9th Cir. 2009). Most

---

[2] *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133 (9th Cir. 2002)

recently in *Brooke v. Kashl Corp.*, 362 F. Supp. 3d 864, 874 (S.D. Cal. 2019), a district court recognized the four-factor test but did not apply it. Rather, the *Brooke* court analogized the facts alleged with the facts discussed in *Best Western* to conclude that there was sufficient likelihood of imminent future injury.

### B. ALLEGATIONS IN PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff alleges that he is legally disabled by virtue of (i) prostate cancer and genitourinary impairment, (ii) renal cancer, (iii) severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy, (iv) degenerative right knee (replaced with a prosthesis), (v) degenerative shoulders and limitation on the use of both shoulders, and attendant impairment of elbows and wrists to reach and twist, and (vi) pleurisy. ¶3. Plaintiff has been declared as disabled by the Arizona Department of Transportation pursuant to doctor's report of disability. ¶3 Plaintiff suffers from physical impairments described above which impairments substantially limit his major life activities. Plaintiff walks with difficulty and pain and requires compliant mobility accessible features at places of public accommodation. Plaintiff's impairment is constant, but the degree of pain is episodic ranging from dull and numbing pain to extreme and excruciating agony. ¶4.

FAC further alleges that he intended to visit Disneyland on March 14-15, 2020, and therefore reviewed booking websites to secure lodging. ¶17. Plaintiff in fact went to Anaheim and lodged at Defendant's competitor. ¶18. However, since Defendant's competitor was replete with accessibility barriers, Plaintiff visited Defendant's Hotel to determine if *it* would be suitable for future lodging but noted that it, too, was replete with photographically documents ADA barriers. ¶19. §Plaintiff also provided a table titled *Relation Between Plaintiff's ADA Disability And Major Life Activities* at ¶6.

Plaintiff's FAC more than satisfies jurisdictional allegations.

### C. UNRUH CLAIMS ARE WELL PLED

A plaintiff must have statutory standing to bring a claim under the Unruh Act. Cal. Civ. Proc. Code § 367. The California Supreme Court has clarified that "a plaintiff cannot sue for discrimination in the abstract, but must actually suffer the discriminatory conduct." *Angelucci v. Century Supper Club,* 41 Cal. 4th 160, 175, 59 Cal.Rptr.3d 142, 158 P.3d 718 (2007). In order to have standing under the Act, a plaintiff must have "been

the victim of the defendant's discriminatory act," meaning that the plaintiff was "actually denied full and equal treatment by a business establishment." *Id.* If a business establishment has a policy of unequal treatment (such as a policy of gender-based price discounts), the discriminatory policy must be "*applied* to the plaintiff." *Id.*

*Angelucci* ruled that plaintiffs who patronize a business and are subjected to discriminatory treatment need not also demand equal treatment in order to have statutory standing. *Id.* at 169, 59 Cal.Rptr.3d 142, 158 P.3d 718.

Thus, in *White v. Square,* 891 F.3d 1174 (9th Cir. 2018), the 9th Circuit certified the UNRUH standing issue to the California Supreme Court:

> Does a plaintiff suffer discriminatory conduct, and thus have statutory standing to bring a claim under the Unruh Act, when the plaintiff visits a business's website with the intent of using its services, encounters terms and conditions that deny the plaintiff full and equal access to its services, and then departs without entering into an agreement with the service provider? Alternatively, does the plaintiff have to engage in some further interaction with the business and its website before the plaintiff will be deemed to have been denied full and equal treatment by the business?

The California Supreme Court responded with a resounding "yes". *White v. Square,* S249248 (S.Ct. Cal. 2019). Here, Plaintiff visited Defendant's Hotel to conduct business there provided that the Hotel was ADA Complaint. The Hotel was not compliant and Plaintiff did not conduct business there.

**D. NEGLIGENCE IS WELL PLED.**

Defendant seems to suggest that the Court should decline to exercise supplemental jurisdiction. The question of propriety of accepting or declining supplemental jurisdiction has been addressed and decided contrary to Defendant's position in *Castillo-Antonio v. Hernandez* (N.D. 19-CV-00672 at Dkt. 20, 2019). Plaintiff incorporates the decision of Chief Magistrate Judge Joseph C. Spero.

District Court judge James Donato addressed and denied identical motion to dismiss negligence claim in *Strojnik v. 574 Escuela, LLC* (N.D. Cal. 3:18-cv-06777-JD, March 31, 2020) at Dkt. 20:

> **C. Negligence**
> Strojnik has adequately alleged a claim for negligence per se. There are four elements: (1) violation of a public statute or regulation; (2) the violation

10

proximately caused injury; (3) the injury resulted from an occurrence of the sort which the statute or regulation was designed to prevent; and (4) the person suffering the injury was one of the class of persons for whose protection the law or regulation was adopted. Cal. Evid. Code § 669; *see Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1126-27 (9th Cir. 2017) (recognizing negligence per se). Strojnik has plausibly alleged that the hotel violated a regulation that itself results in violations of federal and state law; that he was injured by this violation due to "the feeling of segregation, discrimination, [and] relegation to second class citizen status," Dkt. No. 1 ¶ 62; that the ADA and DPA were designed to protect disabled persons, *id.* ¶¶ 43, 58, 64; and that he is disabled, *id.* ¶¶ 2-3.

Plaintiff incorporates Judge Donato's conclusions into this paper.

## CONCLUSION AND PRAYER FOR RELIEF

Plaintiff requests that Defendant's Motion to Dismiss be denied in its entirety; alternatively, if the Court finds that any allegation requires further factual enhancements, for leave to amend.

RESPECTFULLY SUBMITTED[3] this 3rd day of April 2020.

**PETER STROJNIK**

_____
Plaintiff

The original mailed to the Court this 3rd day of April 2020.

Copy emailed to:

TRACY A. WARREN
RICK A. WALTMAN
655 West Broadway, Suite 1625
San Diego, CA 92101

/s/

---

[3] Mailed

11