1
2
3
4

Peter Strojnik,
7847 N. Central Avenue
Phoenix, Arizona 85020
Telephone:  (602) 524-6602
ps@strojnik.com

5
6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

7

Case No: 8:19-cv-01560-JVS-JDE

8       PETER STROJNIK,

9                                     Plaintiff,

10

11                      vs.

12      SCG AMERICA CONSTRUCTION INC.
13      DBA HYATT REGENCY ORANGE
        COUNTY
14

15
                                      Defendant.

**PLAINTIFF'S RESPONSE TO**
**DEFENDANT'S MOTION TO**
**DISMISS SECOND AMENDED**
**COMPLAINT**

16

17                           **SUMMARY**

18          Plaintiff's Second Amended Complaint [27], facially challenged by Defendant's

19      under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), is cautiously drafted to comply with

20      jurisdictional pleading requirements of *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197,

21      45 L.Ed.2d 343 (1975), *Maya v. Centex Corp.,* 658 F.3d 1060, 1067 (9th Cir. 2011),

22      *Wilson v. Kayo Oil Co.*, 563 F.3d 979 (9th Cir. 2009), *Civil Rights Education and*

23      *Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093, 1099 (9th Cir. 2017)

24      and Fed. R. Civ. P. 9(b).   Claims for relief are similarly drafted in compliance with

25      *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) and *Bell Atlantic*

26      *Corp. v. Twombly,* 550 U.S. 544,127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

27          Even more importantly, SAC faithfully resolves all issues raised by the Court in its

28      Order [25].

            The Second Amended Complaint is flawless. Defendant's Motion must be denied.

1

2

3

**ARGUMENT**

4

Defendant's current Motion [29] makes several fundamental legal errors. It fails to

5

distinguish between 12(b)(1) and 12(b)(6) pleading standards and applies the 12(b)(6)

6

pleading standards to its 12(b)(1) argument. It fails to recognize the distinction between a

7

facial and factual 12(b)(1) jurisdictional attack, applying factual standards to its facial

8

attack. The inextricable confounding of legal standards result in a Motion that should not

9

be granted.

**A. LEGAL STANDARDS**

10

**I. Distinction Between Facial and Factual Challenges to Jurisdiction**

11

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may

12

be "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

13

Where a defendant makes a facial attack on jurisdiction, factual allegations of the

14

complaint are taken as true. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d

15

1204, 1207 (9th Cir. 1996); *see also Defs. of Wildlife*,  504 U.S. at 561. ("At the pleading

16

stage, general factual allegations of injury resulting from the defendant's conduct may

17

suffice, for on a motion dismiss, [courts] presume that general allegations embrace those

18

specific facts that are necessary to support the claim.") (internal citation and quotations

19

omitted). The plaintiff is then entitled to have those facts construed in the light most

20

favorable to him or her. *Fed'n of African Am. Contractors*, 96 F.3d at 1207.

21

In contrast, a factual attack on subject matter jurisdiction occurs when a defendant

22

challenges the lack of jurisdiction with affidavits or other evidence. *See Leite v. Crane

23

Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "When the defendant raises a factual attack, the

plaintiff must support … jurisdictional allegations with 'competent proof,' under the same

24

evidentiary standard that governs in the summary judgment context." *Leite*, 749 F.3d at

25

1121 (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010)). The district court may

26

resolve those factual disputes itself, unless "the existence of jurisdiction turns on disputed

27

factual issues[.]" *Id.* at 1121-22 (citations omitted). "To the extent that the jurisdictional

28

facts are disputed . . ., the parties should be allowed to conduct discovery for the limited

2

1  purpose of establishing jurisdictional facts before the claims can be dismissed." *Siderman*

2  *de Blake v. Republic of Argentina*, 965 F.2d 699, 713 (9th Cir. 1992)

3  Where a defendant brings a factual challenge, "a court may look beyond the

4  complaint to matters of public record without having to convert the motion into one for

5  summary judgment." *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted).

6  Once the moving party has made a factual challenge by offering affidavits or other

7  evidence to dispute jurisdictional allegations in the complaint, the party opposing the

   motion must "present affidavits or any other evidence necessary to satisfy its burden of

8  establishing that the court, in fact, possesses subject matter jurisdiction." *Colwell v. Dep't*

9  *of Health & Human Servs.,* 558 F.3d 1112, 1121 (9th Cir. 2009) (quoting *St. Clair v. City*

10  *of Chico,* 880 F.2d 199, 201 (9th Cir. 1989)).

11  In *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101, 118 S. Ct. 1003

12  (1998), the Supreme Court emphasized that a federal court must first establish as "an

13  antecedent" matter that it has jurisdiction.

14  **II. 12(b)(1) and 12(b)(6) Elements of Proof are Different.**

15  The standing inquiry requires a plaintiff to show (1) he suffered an injury in fact;

16  (2) there is a causal connection between that injury and the defendant's conduct; and (3) a

17  favorable decision would likely redress the injury. *CREEC*, 867 F.3d at

18  1098. (citing *Defenders of Wildlife,* 504 U.S. at 560). When a plaintiff seeks injunctive

19  relief, he must also "allege 'continuing, present adverse effects' stemming from the

20  defendant's actions." *Id.*

21  Article III "requires that the party seeking review be himself among the

22  injured." *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972). A plaintiff has sustained

23  an injury in fact only if she can establish "an invasion of a legally protected interest

24  which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or

25  hypothetical." *Lujan*, 504 U.S. at 560 (citations and internal quotation marks omitted).

26  Where, as here, a party seeks injunctive relief, "past exposure to illegal conduct

27  does not in itself show a present case or controversy." *City of Los Angeles v. Lyons*,

   461 U.S. 95, 102 (1983) (alteration omitted). Instead, the plaintiff must allege

28  "continuing, present adverse effects" stemming from the defendant's actions. *Id.*

3

1    A plaintiff experiences continuing adverse effects where a defendant's failure to

2   comply with the ADA deters her from making use of the defendant's facility. *Chapman v.*

3   *Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 953 (9th Cir. 2011) (en banc). The Cut of Appeals

4   has dubbed this the "deterrent effect doctrine." *Id.* at 949-50. "[W]hen a plaintiff who is

5   disabled within the meaning of the ADA has actual knowledge of illegal barriers at a public

6   accommodation to which he or she desires access, that plaintiff need not engage in the

7   'futile gesture' of attempting to gain access in order to show actual injury. . . ." *Pickern v.*

8   *Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002) (quoting 42 U.S.C. §

9   12188(a)(1)). "So long as the discriminatory conditions continue, and so long as a plaintiff

    is aware of them and remains deterred, the injury under the ADA continues." *Id.* at 1137.

10   ADA plaintiff may demonstrate a likelihood of future harm in one of two ways.

11   He may either show (1) injury in fact coupled with an intent to return to the offending

12   facility; or (2) deterrence from visiting or returning to the facility because of the ADA

13   violation(s). *Id.* at 1098-99.

14   On the other hand, to state an ADA claim, a plaintiff must allege that  (1) he is an

15   individual with a disability; (2) the defendant is a private entity that owns, leases, or

16   operates a place of public accommodation; and (3) the plaintiff was denied public

17   accommodations by the defendant because of his or her disability. 42 U.S.C. §§ 12182(a)-

18   (b); *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 730 (9th Cir. 2007); *Arizona ex rel. Goddard*

19   *v. Harkins Amusement Enter. Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).

20   **III.        The Factual Overlap between Element (2) in a Statement of Claim and**
     **Element (3) in a Statement of Jurisdiction further Complicates Standing**
21   **Analysis.**

22   Proof of causal connection between the injury and defendant's conduct (relating to

23   jurisdictional proof) and the denial of public accommodation because of plaintiff's

24   disability (relating to statement of ADA claim) present a factual overlap.

25   The threshold question of whether plaintiff has standing (and the court has

26   jurisdiction) is distinct from the merits of his claim. Rather, "[t]he jurisdictional question

27   of standing precedes, and does not require, analysis of the merits." *Equity Lifestyle Props.,*

28   *Inc. v. Cnty. of San Luis Obispo,* 548 F.3d 1184, 1189 n. 10 (9th Cir. 2008); *see*

4

1    *also Seldin,* 422 U.S. at 500 (Standing "in no way depends on the merits of the contention

2    that particular conduct is illegal."). *See also Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773,

3    90 L.Ed. 939 (1946); *Catholic League for Religious and Civil Rights v. City & Cnty. of*

4    *San Francisco,* 624 F.3d 1043, 1049 (9th Cir. 2010) (en banc) ("Nor can standing analysis,

5    which prevents a claim from being adjudicated for lack of jurisdiction, be used to disguise

6    merits analysis, which determines whether a claim is one for which relief can be granted

7    if factually true.").

          Therefore, in pleading jurisdiction in an ADA case, the question *how* an

8    accessibility barrier affect a plaintiff's particular disability impermissibly morphs element

9    3 of the statement of the claim (that plaintiff was denied public accommodations by the

10   defendant *because* of his or her disability) and element 2 of the jurisdictional allegation

11   (that there is a *causal connection* between that injury and the defendant's conduct.)

12   **IV.     Pleading Standards under Rule 12(b)(1) and 12(b)(6) are also Different[1].**

13         *Ashcroft* and *Twombly* apply to 12(b)(6) motions. *Ashcroft* and *Twombly* address

14   the pleading required to survive a motion to dismiss for failure to state a claim, and,

15   distilled to their essence, impose two requirements. First, the reviewing court, though

16   crediting factual assertions made in the pleadings, is not required to credit legal

17   conclusions. *Ashcroft,* 129 S.Ct. at 1949-50 (citing *Twombly,* 550 U.S. at 555, 127 S.Ct.

18   1955). Second, the complaint cannot survive a motion to dismiss unless it alleges facts that

19   plausibly entitle plaintiff to relief. *Id.* at 1950-51.

20

21

22

_____

23   [1] This is addressed in the analysis by the Honorable John A. Mendez. In *Johnson v.*
     *Alhambra & O Associates,* (2019 E.D. Cal. 2:19-cv-00103 at Dkt. 15), Judge Mendez,

24   relying on *Centex* denied a motion to dismiss under Rule 12(b)(1) by noting, in part:

25
          [A] plaintiff's statement of subject-matter jurisdiction is not governed by the

26        strict pleading standard of *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) and *Bell*
          *Atlantic Corp. v. Twombly,* 550 U.S. 554 (2007). *Maya v. Centex Corp.,* 658

27        F.3d 1060, 1067 (9th Cir. 2011).

28

1     However, *Twombly* and *Ashcroft* are ill-suited to application in the constitutional

2   standing context because in determining whether plaintiff states a claim under 12(b)(6),

3   the court necessarily assesses the merits of plaintiff's case. *Centex.*

4     The proper 12(b)(1) analysis is subject to a different standard. *Centex,* 658 F. 3d at

5   1067. "For purposes of ruling on a motion to dismiss for want of standing, both the trial

6   and reviewing courts must accept as true all material allegations of the complaint and must

7   construe the complaint in favor of the complaining party." *Seldin,* 422 U.S. at 501. "**At the**

8   **pleading stage… we `presum[e] that general allegations embrace those specific facts**

9   **that are necessary to support the claim.'**" (emphasis supplied) *Defenders of Wildlife,*

10   504 U.S. at 561, *see also Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 1014 n. 3 (1992)

11   (cautioning that while at the summary judgment stage, the court "require[s] specific facts

12   to be adduced by sworn testimony," a "challenge to a generalized allegation of injury in

13   fact made at the pleading state ... would have been unsuccessful"). *See also Wilson, 563*

14   *F.3d at 980 (*noting that the minimal allegations that a plaintiff intends to return is

sufficient to defeat a motion to dismiss).

15
## V. Fed. R. Civ. P. 9(b) Encapsulates the *Defenders of Wildlife, Seldin, Centex* and *Wilson* Decisions in Federal Rules of Civil Procedure
16

17     Fed. R. Civ. P. 9(b) is consistent with *Defenders of Wildlife, Seldin, Centex* and

18   *Wilson.* It provides that  "intent (*to return*) … and other conditions of a person's mind

19   (*being deterred*) may be alleged generally". Fed. R. Civ. P. 9(b).

20
## VI. The *CREEC*  Pleading Standard is Also Consistent with *Defenders of Wildlife, Seldin, Centex, Wilson* and Fed. R. Civ. P. 9(b)
21

22     The Court in *CREEC* confirmed that general jurisdictional allegations suffice:

23     A plaintiff experiences continuing adverse effects where a defendant's failure
to comply with the ADA deters her from making use of the defendant's

24     facility. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 953 (9th Cir.
2011) (en banc). We have dubbed this the "deterrent effect doctrine." *Id.* at

25     949-50. "[W]hen a plaintiff who is disabled within the meaning of the ADA
has actual knowledge of illegal barriers at a public accommodation to which

26     he or she desires access, that plaintiff need not engage in the 'futile gesture'
of attempting to gain access in order to show actual injury. . . ." *Pickern v.*

27     *Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002) (quoting

28     42 U.S.C. § 12188(a)(1)). "So long as the discriminatory conditions continue,

1
2

and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues." *Id.* at 1137.

3

\*\*\*

4

**The Named Plaintiffs have alleged in the First Amended Complaint that they intend to visit the relevant hotels, but have been deterred from doing so by the hotels' non-compliance with the ADA. They further allege that they will visit the hotels when the non-compliance is cured.** Thus, the ADA violations have prevented them from staying at the hotels. Without such averments, they would lack standing. However, "construing the factual allegations in the complaint in favor of the plaintiffs, " as we must at this preliminary stage, *Mont. Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 979 (9th Cir. 2013), we conclude that the Named Plaintiffs have sufficiently alleged injury in fact. *Chapman*, 631 F.3d at 953. **Their harm is "concrete and particularized, " and their intent to visit the hotels once they provide equivalent shuttle service for the disabled renders their harm "actual or imminent, not conjectural or hypothetical."** (*Emphasis supplied*)

5
6
7
8
9
10
11
12

*CREEC* 867 F.3d at 1100-01. There is no jurisdictional difference between *CREEC* and this case.

13
14

15
16

## B. APPLICATION OF LEGAL STANDARDS TO THE SECOND AMENDED COMPLAINT

17

### I. SAC satisfied the *CREEC, Defenders of Wildlife, Seldin, Centex, Wilson* and Fed. R. Civ. P. 9(b) Jurisdictional Pleading Standards.

18
19

Federal courts must "take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the act." *Doran v. 7-Eleven, Inc.,* 524 F.3d 1034, 1039-40 (9th Cir. 2008) ((quoting *Trafficante v. Metro Life Ins. Co.,* 409 U.S. 205, 209 (1972)). "At the pleading stage… [the Supreme Court] presumes that general [jurisdictional allegations] allegations embrace those specific facts that are necessary to support the claim.'" *Defenders of Wildlife,* 504 U.S. at 561, *see also Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 1014 n. 3 (1992)

20
21
22
23
24
25

26
27
28

In SAC, Plaintiff factually alleges his 2008 ADA Amendment Act and 28 C.F.R. 36.105 disabilities. *See* id. at ¶¶3, 6 and 7. He factually alleges that he lodged in Anaheim on or about March 14-15, 2019 at Defendant's competitor's lodging facility, but that he

experienced accessibility barriers there. ¶20. He reviewed 1st and 3rd party booking websites for lodging at Defendant's Hotel, but found that the booking websites were not compliant with 28 C.F.R. 36.302(e)(1)(ii). *See* Table in ¶20. He then personally visited Defendant's Hotel in order to determine whether it would be suitable for future travel and found that it, too, was replete with 12 distinct, photographically documented, ADA violations[2]. *Id.*

Plaintiff factually alleges his ADA requirements based on his disability in ¶¶ 21 and 22 and referencing applicable Standards for Accessibility Design. Plaintiff connects the *Relationship Between Plaintiff's ADA Disabilities and Major Life Activities* in a table at ¶6. He further specifically and factually describes how *each* photographically documented ADA violation denied him full and equal access to the Hotel. ¶22 (a)-(xi) and referenced each violation to the 2010 Standards for Accessibility Design. He concludes,

13. The ADAAG violations in this Verified Complaint relate to barriers to Plaintiffs mobility. This impairs Plaintiff's full and equal access to the Hotel which, in turn, constitutes discrimination satisfying the "injury in fact" requirement of Article III of the United States Constitution.

14. Plaintiff is deterred from visiting the Hotel based on Plaintiff's knowledge that the Hotel is not ADA or State Law compliant as such compliance relates to Plaintiff's disability. (Listing facts (a)-(h) in support of this allegation.[3])

15. Plaintiff intends to visit Defendant's Hotel at a specific time when the Defendant's noncompliant Hotel becomes fully compliant with ADAAG; just as a disabled individual who intends to return to a noncompliant facility suffers an imminent injury from the facility's existing or imminently threatened noncompliance with the ADA, a plaintiff who is deterred from patronizing a hotel suffers the ongoing actual injury of lack of access to the Hotel.

\*\*\*

23. The ADA and Unruh accessibility violations described in the preceding paragraph relate to Plaintiff's disabilities and interfere with Plaintiff's full

---

[2] Plaintiff notes that personally taken photographs represent the ultimate factual proof of a condition.

[3] In March of 2019, Plaintiff has the specific intent to visit the Los Angeles area on or about the weekend of April 4, 2020.  Of course, in light of COVID-19 restrictions, this travel plan has been modified until after the COVID-19 restrictions have been lifted.

8

and complete enjoyment of the Hotel; for the details of the relation between Plaintiff's disabilities and ADAAG violations, Plaintiff incorporates the table in ¶6 above.

24. The removal of accessibility barriers listed above is readily achievable.

25. As a direct and proximate result of ADA Violations, Defendant's failure to remove accessibility barriers prevented Plaintiff from equal access to the Defendant's public accommodation.

Lastly, he alleges that his injuries would be redressed by injunctive relief as alleged in ¶25.

These allegations more than adequately comply with the *CREEC, Defenders of Wildlife, Seldin, Centex, Wilson* and Fed. R. Civ. P. 9(b) Jurisdictional Pleading Standards.

**II. SAC satisfied the *Ashcroft* and *Twombly* 12(b)(6) Pleading Standards.**

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

In SAC, Plaintiff alleges that he is an individual with disability, ¶¶ 3, 5 and the table titled *Relationship Between Plaintiff's ADA Disabilities and Major Life Activities* in ¶6. Plaintiff factually alleges that Defendant owns, operates, leases or leases to a lodging business at 11999 Harbor Blvd. In Garden Grove. ¶8. Plaintiff further factually alleges that he is denied public accommodations by Defendant on the basis of his disability[4], *see* ¶¶ 10, 28, 29, 34, 35.

Plaintiff factually alleges his ADA requirements based on his disability in ¶¶ 21 and 22, referencing applicable Standards for Accessibility Design. Plaintiff connects the in a table in ¶6. He further specifically and factually describes how *each* photographically documented ADA violation denied him full and equal access to the Hotel. ¶22 (i)-(xi). With respect to the violation of 28 C.F.R. 36.302(e)(1)(ii), SAC alleges what is required

---

[4] 42 U.S.C. §12182 provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

1 on the booking websites and what is missing, *see* ¶21(a)-(e) specifying the information

2 required on the booking websites "to reasonably permit Plaintiff to assess independently

3 whether the hotel or guest room meets his accessibility needs". With respect to encounter

4 with physical barriers to accessibility, ¶¶ 21 and 22 along with table in ¶6 titled

5 *Relationship Between Plaintiff's ADA Disabilities and Major Life Activities* and the

6 specific causal connection between Plaintiff's disability and each of the barriers, ¶22(i)-

7 (xi) defeat Defendant's argument.

## C. DEFENDANT'S ARGUMENT FOR DISMISSAL OF UNRUH STATE LAW CLAIM IS NOT WELL TAKEN

9 At 16:19, Defendant accurately states Unruh limitation to "***personally encountered***

10 violations on a particular occasion" (emphasis in original), but then concludes that

11 "Strojnik did not personally encounter any barriers". *Id.* at 16:25. This is just a misreading

12 of the SAC in which Plaintiff alleges the undisputable fact that he, in fact *personally*

13 encountered the barriers and was denied equal access.

14 Unruh is intended to ensure disabled persons "have the same right as the general

15 public to the full and free use" of facilities open to the public. (§ 54, subd. (a);

16 *Urhausen v. Longs Drug Stores California, Inc.* 155 Cal.App.4th 254, 261 (2007)

17 (*Urhausen*). It declares, "Individuals with disabilities shall be entitled to full and equal

18 access, as other members of the general public, to accommodations, advantages,

19 facilities, . . . and privileges of all . . . hotels, lodging places, places of public

20 accommodation, amusement, or resort, and other places to which the general public is

21 invited . . . ." (§ 54.1, subd. (a)(1).) For the Act's purposes, "'[f]ull and equal access' . .

22 . means access that meets the standards of Titles II and III of the Americans with

23 Disabilities Act of 1990 (Public Law 101-336) and federal regulations adopted

24 pursuant thereto, except that, if the laws of this state prescribe higher standards, it shall

25 mean access that meets those higher standards." (§ 54.1, subd. (a)(3); *Urhausen*, at p.

26 261; see also § 54, subd. (c) ["A violation of the right of an individual under the

27 Americans with Disabilities Act of 1990 (Public Law 101-336) also constitutes a

28 violation of this section"].) "'Access' refers not only to entry into a building but, more

1  broadly, to the use of all facilities made available for general public use . . . ."

2  (*Urhausen*, at p. 261.)

3      A disabled person has standing to pursue an injunctive relief claim if he or she

4  is merely "'potentially aggrieved'" by a defendant denying equal access, but that same

5  disabled person has standing to pursue a damages claim only if the defendant actually

6  denied him or her equal access on a particular occasion. *Reycraft v. Lee* 177

7  Cal.App.4th 1211, 1224 (2009)*,* Further, "to maintain an action for damages pursuant

8  to section 54 et seq. an individual must take the additional step of establishing that he

9  or she was denied equal access on a particular occasion". *Donald v. Cafe Royale, Inc.*

10  218 Cal. App. 3d 168, 183 (1990)

11      Here, SAC alleges that on March 14-15, 2019, Plaintiff presented himself to

12  Defendant's Hotel to conduct business there because Defendant's competitor where he

13  was lodging that night was replete with accessibility barriers:

14  19. Plaintiff lodged in Anaheim on or about March 14-15, 2019 at Defendant's
      competitor's lodging. Defendant's competitor's hotel was replete with
15      accessibility barriers and, therefore, Plaintiff visited Defendant's hotel to
      determine if it would be suitable for future lodging.
16

17  20. Plaintiff learned that not only did Defendant's hotel violate booking websites
      disclosures pursuant to 28 C.F.R. 36.302(e), but it was also replete with
18      accessibility barriers all of which Plaintiff documented with website screenshots
      and documentary photographs as follows [listing denials of equal access].
19

20      Defendant concludes that "is [Plaintiff] is able to "ambulate", it is irrelevant

21  whether there are inaccessible counters or improper hardware, as alleged in the SAC",

22  quoting to *Surrey v. True Beginnings, LLC*, 168 Cal.App.4th 414, 419 (2008) *Motion* at

23  17:16-19. However, the *Surrey* Appellate Opinion has been overruled by the California

24  Supreme Court in *White v. Square,* 7 Cal. 5th 1019 (2019):

25
      Conclusion
26
      We conclude that a person who visits a business's website with intent to
27      use its services and encounters terms or conditions that exclude the person
      from full and equal access to its services has standing under the Unruh
28

11

1
2
3

Civil Rights Act, with no further requirement that the person enter into an agreement or transaction with the business. We disapprove *Surrey v. TrueBeginnings, LLC*, *supra*, 168 Cal.App.4th 414, to the extent it is inconsistent with this opinion.

4
5

**D.  DEFENDANT'S ARGUMENT FOR DISMISSAL OF NEGLIGENCE CLAIM IS NOT WELL TAKEN.**

6

7

8

9

Defendant pleads that the Court decline supplemental jurisdiction over the negligence claim *if* Plaintiff lacks standing to bring the ADA claim. Since Plaintiff disagrees with the premise of the proposition, Plaintiff requests that the Court retain jurisdiction over all State Law Claims.

10

**E.  CONCLUDING OBSERVATIONS.**

11

12

13

Plaintiff is an ADA tester. SAC is a good faith attempt to remediate all deficiencies noted in the Order of the Court [25]. At this point, it is unclear to Plaintiff what enhancements other than those noted in the Order would satisfy Defendant.

14

15

16

17

18

Several District Courts have denied motions to dismiss based on lesser factually intense allegations that the SAC. *See, e.g., Strojnik v. GF Carneros Tenant* (N.D. Cal. 3:19-cv-03583 at Dkt. 28), *Brooke v. Kashl Corporation* (S.D. Cal. 3:18-cv-02581 at Dkt. 15), *Strojnik v. 574 Escuela, LLC* (N.D. Cal. 3:18-cv-06777 at Dkt. 20 and 24), *Johnson v. Alhambra & O Associates*, (E.D. Cal.  2:19-cv-00103 at Dkt. 15), *CREEC,* supra.

**CONCLUSION AND PRAYER FOR RELIEF**

19

20

21

22

For the foregoing reasons, Plaintiff respectfully requests that Defendant's Motion be denied in its entirety. If the Court finds that additional pleading enhancements are needed, Plaintiff pleads for leave to amend.

RESPECTFULLY SUBMITTED this 5th  day of May 2020.

23

**PETER STROJNIK**

24

25

26

Plaintiff

27

ECF filed this 5th Day of May, 2020, and served on Defendant through PACER.

28

/s/

12